NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————————

No. 14-1373

———————————


JOYCE ROYSTER,
                              Appellant

v.

LAUREL HIGHLANDS SCHOOL DISTRICT


———————————

Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil Action No. 2-12-cv-00244)
District Judge: Honorable Joy Flowers Conti

———————————

Submitted Under Third Circuit LAR 34.1(a)
November 17, 2014

Before: AMBRO, SCIRICA, and ROTH, Circuit Judges

(Opinion filed: December 11, 2014)

———————————

OPINION[*]

———————————


AMBRO, Circuit Judge

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

Dr. Joyce Royster filed this action against Laurel Highlands School District (the "School District") alleging race, gender, and age discrimination under: 42 U.S.C. § 1983; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*; the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, *et seq.*; and the Pennsylvania Human Relations Act, 43 Pa. Cons. Stat. § 955(a), *et seq.* She appeals the District Court's grant of summary judgment in favor of the School District on all of her claims. We affirm that judgment.

## I.

In the fall of 2010, the School District sought to appoint a new Superintendent for the following school year. The outgoing Superintendent, Dr. Gary Brain, recommended that the School Board first consider three current employees with whom Brain personally had worked and was well acquainted. Each was a Caucasian male in his mid-40s. The Board agreed it would prioritize these three candidates before opening up the position to external applicants.

In November 2010, Royster called Beverly Beal, a member of the School Board, to discuss Royster's granddaughter, a student enrolled at Laurel Highlands Middle School. During the call, Beal mentioned the Superintendent vacancy and suggested Royster apply. Interested in the job, Royster called the School District's administrative office to obtain an application packet. A staff member told her there was no such packet but provided her with the School Board's contact information. Over the next couple of months, Royster communicated with seven of the nine Board members to inquire about the position. The members with whom she spoke, however, gave her conflicting

2

information.  While two, including Beal, stated that Royster had a "fair" and "equal opportunity to apply," one Board Member told her "they were going to hire from inside."

In January 2011, Royster mailed a letter and resumé to School Board President Angelo Giachetti and hand delivered a copy of these materials to Beal after running into her at a local restaurant.  On receiving Royster's application, Giachetti informed her that the School Board only was considering internal candidates for the Superintendent position.  Indeed, the Board met informally with each of these individuals in December 2010 and hired one of the three in March 2011.  The School District never posted the Superintendent position, either internally or externally, and it never considered any candidates besides the three interviewed applicants.  When she discovered that the Superintendent position had been filled, Royster brought suit.

The District Court granted the School District's motion for summary judgment, concluding that Royster produced no evidence that the School District treated her differently than it did similarly situated individuals outside of her protected class.  In the alternative, the District Court held that, even had Royster established a *prima facie* case, the record was devoid of evidence suggesting that the School District's non-discriminatory reason for failing to hire her—namely, its preference for hiring an internal candidate—was merely pretext for unlawful discrimination.

## II.

The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.  We have jurisdiction under 28 U.S.C. § 1291.  "We exercise plenary review over a District Court's grant of summary judgment . . . ." *Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527,

3

545 (3d Cir. 2012) (quoting *Beers-Capitol v. Whetzel*, 256 F.3d 120, 130 n.6 (3d Cir. 2001)). "We will affirm if our review shows 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Liberty Mut. Ins. Co. v. Sweeney*, 689 F.3d 288, 292 (3d Cir. 2012) (quoting Fed. R. Civ. P. 56(a)). In undertaking that inquiry, we view the evidence in the light most favorable to the non-moving party. *Heightened Independence & Progress, Inc. v. Port Auth. of N.Y. & N.J.*, 693 F.3d 345, 351 (3d Cir. 2012).

**III.**

As Royster has produced no direct evidence of sex, race, or age discrimination, her claims are governed by *McDonnell Douglas*'s burden-shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). In order to establish a *prima facie* case of discrimination based on a failure to hire, a plaintiff must show that (1) she is a member of a protected class, (2) she was qualified for an employment position, (3) the employer rejected her despite her qualifications, and (4) she was afforded less favorable treatment than similarly situated individuals outside her class. *Id*. at 802. If the plaintiff succeeds in making a *prima facie* case, the burden shifts to the defendant to identify a legitimate, non-discriminatory reason for its employment action. *Id.* If the defendant carries its burden, the plaintiff must prove that the defendant's stated reason is a pretext for unlawful discrimination. *Id.* at 804.

The School District concedes that Royster has satisfied the first three elements of her *prima facie* case. The only question is whether she has satisfied the fourth prong—

4

whether a similarly situated individual outside her protected class under comparable circumstances received more favorable treatment than her.

We agree with the District Court that Royster and her proffered comparators are not similarly situated. Though "similarly situated" obviously does not mean "identically situated," a plaintiff must demonstrate that she and her alleged comparators are "alike in all relevant respects." *Startzell v. City of Phila.*, 533 F.3d 183, 203 (3d Cir. 2008). Here the three interviewed applicants all were current employees of the School District with personal recommendations from Brain. Royster, by contrast, was an external candidate who had no prior work relationship with the School District. Given these significant differences, Royster and the interviewed candidates were not "alike in all relevant respects." *See, e.g.*, *Kelley v. Goodyear Tire & Rubber Co.*, 220 F.3d 1174, 1178 (10th Cir. 2000) (holding that an external candidate was not similarly situated to "an internal applicant, who, by [the defendant's] policy was not required to go through the full interview process"); *Leadbetter v. Gilley*, 385 F.3d 683, 692 (6th Cir. 2004) (concluding that two applicants for a university position were not appropriate comparators where only one "was recommended by the University's top brass").

Royster's counterarguments are unavailing. Her assertion that the School Board considered an external candidate for the position of Federal Programs Coordinator in 2008, despite having only advertised that position internally, is not on point. The School Board's behavior approximately three years earlier when hiring for a lesser administrative position sheds no light on its hiring criteria for a completely different position not advertised at all. Likewise, the fact that two Board members told Royster

5

that she had a "fair" or "equal opportunity to apply" does not establish that she and the interviewed candidates were in fact alike in all relevant respects. Notwithstanding that no single Board member had authority to act or speak alone on behalf of the Board, these offhand comments cannot be reasonably interpreted to mean the Board was equally predisposed to hire Royster for the job as the internal candidates.

Because the record reveals no other evidence that gives rise to an inference of discrimination, Royster cannot make out a *prima facie* case, and we need not examine the remaining steps in the *McDonnell Douglas* framework. Summary judgment was proper, and we thus affirm.